324-0147 Denise Breed and Daryl Breed as parents and ex-friends of D.P. Amayor, appellants by John Bolley v. Linda v. Querrey, appellee by Lauren Hull. Mr. Bolley, if you're ready to proceed. Thank you. Please. Good morning, Your Honors. Good morning, Counsel. For the record, my name is John Bolley. I represent the plaintiff in this appeal and may it please the Court. Your Honors, the issue in this appeal comes down to whether a circuit court may weigh the evidence and make its own factual determination when deciding a motion for summary judgment. All of our precedent has consistently held that, in general, no, a circuit court may not weigh the evidence and may not make its own factual determination when deciding a motion for summary judgment and that, in particular, in a personal injury case, such as this one, the proximate cause of an injury is a question of fact to be determined by a jury after the jury's consideration of the evidence and the attending circumstances. In this case, however, the circuit court stated that it had reviewed the evidence and made its own findings of fact and concluded, and this is from page 19 and 20 of the record on appeal, quote, in my mind, the accident was caused by the plaintiff. It was not caused by the defendant, and that's the clear evidence. So, in my mind, there is no proximate cause. The accident was unavoidable due to not being able to see the person and, therefore, a granted motion for summary judgment. The problem with that, though, is that it should never be an issue of what a circuit court finds the evidence to be in his or her mind. That its positive inquiry should be whether reasonable minds can differ as to the evidence. That's a very rare circumstance, exceedingly rare circumstance, and only in that kind of circumstance can summary judgment be granted. There's no finding by the court here that reasonable minds cannot differ as to the factual issues that were presented here. There's three particular factual issues that the court made its own findings on that I think a circuit court, or I'm sorry, a jury could go either way on. I think clearly a jury could go the way that we would want them to go on the plaintiff's side, but in any event, it should be considered by a group of peers, 12 people from the county in question. Those three issues are, number one, whether the defendant in this query was exercising due care when she was driving her vehicle in an area where there was a school, where she knew that there would be children present at the end of classes. She was, in fact, on her way to pick up her own daughter that day. Number two, whether the defendant hit the plaintiff or whether the plaintiff ran to the side of defendant's car. And number three, whether the defendant was distracted because of her cell phone usage at the time of the accident. With regard to that first issue, whether or not the defendant was exercising due care when driving in an area where children were present, there's a recent appellate court case, Mirka v. Rose. I think it's right on point. Mirka also involved a 14-year-old girl who was crossing the street near a school after classes had let out. And admittedly, she was doing so imperfectly. There was a light that said, don't walk. She was crossing anyhow. She was running with her friends. She wanted to get something to eat. There's no question that the defendant driver in that case had the green light. And she struck the little girl in that case. There was also testimony that she was probably driving within the speed limit. And even the plaintiff's own expert conceded that the little girl might have been outside of the crosswalk. Wasn't there evidence in that case that the damage to the vehicle was in front of the vehicle? In our particular case? No, in that case. I believe that that wasn't a question. She did hit. There was two girls that was hit. One of the girls was hit squarely in the middle of the bumper. There's no question about that. And in our case, isn't the evidence? It's more on the corner. But the girl that died in the murder case, that girl was also hit on the corner. So it's very similar to what we have here. It's certainly the front of the vehicle. And that's the second issue. Did the girl hit the car? Did the car hit the girl? The circuit court judge made his ruling based largely on the testimony of Carolyn Atherton, who was a school bus driver waiting to pick up some children, and photographs of the vehicle. But Atherton kind of goes both ways about that. Certainly, at some points in her depositions, she says that the girl ran into the car. But she also says at other times that it was the car that hit the girl. Atherton says, and this is contained in the record at page, I believe, 160. All I saw was, like I say, something dashed in front of the car. The defending driver herself says the same thing. I saw her come between the cars and the buses. By the time I saw her, I was slamming on my brakes, and I struck her. The circuit court looked at that evidence, that testimonial evidence, and found the other way, found that the girl had hit the car, not the other way around. That should have been put to a jury. We have the sole non-party witness's case, Ms. Atherton, the bus driver, saying it both ways. So clearly that's an issue that could have gone either way in the jury's mind. The judge should not have substituted his opinion as to what happened based on that testimony and that photograph. I'm sure the court has seen the photograph. For the record, it's contained at pages 153 and 197 of the record. It's also at 106 in the appendix. And that photograph shows clear damage to the front left corner of the bumper. It clearly indicates that the car had hit this girl. The circuit court judge— Clearly, counsel. Well, I think if it's not clear, then it ought to be put to a jury. If it was clear either way, of course, you know, that would be one of those rare circumstances. So I'll withdraw that characterization. But in any case, I think one thing that is clear is that a 14-year-old girl who, by all accounts, weighed about 95 pounds, running into the side of the vehicle would not do the kind of damage that's contained or that's depicted in that photograph. And that's something that a jury can assess without the aid of an expert witness. That's what the Peachtree v. McGovern case talks about, the recent Illinois Supreme Court, on the use of photographs in these kinds of cases. And that's another factual issue that should have been put to the jury. The third factual issue that should go to the jury is whether the defendant driver was distracted due to her cell phone usage. Now, the defendant driver testifies that she was using a hands-free device and she was not engaged in the phone call. It was a work conference call. She's a computer software salesperson. The call started while she was at home and it continued until she hit this girl. The defense characterizes this as something that's very innocuous. It's no more distracting than listening to a podcast or an audiobook or the radio when you're driving your car. The problem with that, though, is that a podcast, a song on the radio, is not going to affect your livelihood, your career, your ability to provide for your family. This particular call that the defendant on was so critically important, apparently, that she couldn't just excuse herself and say, hey, I have to run. I have to pick up my daughter. We've all been on conference calls where we've said, everyone, I have to go. I'm sorry. I'm going to excuse myself and I'll catch up with you later and we go about our day. This call was so important that she could not do that. She started the call at home. It continued while she was in the car and it continued until she hit this girl. That should have been a question for the jury to assess, okay, was this person distracted by that call? One thing I want to point out, in our opening brief, we said that using a cell phone, even with a hands-free device, is prima facie evidence of negligence. It's not. We're incorrect about that. As we say in our reply brief, we withdraw that argument. Nonetheless, cell phone usage, even hands-free device cell phone usage, is probative of whether a driver was exercising due care. There's a third district case. I believe it is People v. Jackson. It's cited in the brief, which cites People v. Mueller. A second district case that the drivers in the state of Illinois are on notice of the rules of the road. The rules of the road say, quite clearly, using hands-free technology, such as a headset or voice-activated control, is considered a distraction while driving and can be dangerous. I think that's something that a jury should consider, using just a jury's everyday knowledge about cell phone usage, traffic, and driving in places where children are present, as to whether that would have been a distraction and whether the driver was exercising ordinary care under those circumstances. The court in Merca, when it concluded that, you know, when you're driving in an area with children, there's a special circumstance, a special hazard present as referenced in our vehicle code, and that requires something more when you're driving in that kind of an area. The court in Merca traced the origin of that doctrine back to a 1961 case, Stowers v. Clark, a third district case out of Rock Island, when Rock Island was still in the third district. Of course, it's not now. But in that case, the court said that, in some pretty good language that holds up over 50 years later, where children are known to be or may reasonably be expected to be in the vicinity, a degree of vigilance commensurate with a greater hazard created by their presence or probable presence is required of a driver of a motor vehicle to measure up to ordinary care. And that's been the law in our state since at least that time. In Merca, the court relied heavily on that reasoning, and I think that's something that a jury should have considered here as well. Ms. Atherton testified that, you know, when school lets out, children are everywhere, and she also said that they don't like to use the crosswalk. They will sometimes dart between cars, as the girl in our case did, and as kids everywhere do, and I think that's pretty common knowledge. Whether or not Ms. Query was exercising due care, with all of that in mind, I think, is something that should have been put to the jury. And it's also a factual issue that was similar in the Merca case. In that case, the defendant driver was, in fact, a schoolteacher. She knew this area very well. She knew that kids would be running around after class is in, and they may not be crossing the street perfectly. Admittedly, the girl in our case was not, but that's an issue of contributory negligence, if anything, and it ought to be considered by a jury as well, along with all of the other facts. Counsel, what was the evidence that the driver was in some way not being vigilant? Well, I think that the biggest evidence is that she hit a girl in a school zone, number one. That should not happen. Drivers have, under our vehicle code, an obligation to not collide with pedestrians. If that happens, it's time to weigh the evidence and see were they exercising vigilance, were they exercising due caution and ordinary care, in light of all of the attending circumstances. That's evidence that the accident occurred. It's not necessarily evidence that she was negligent. That's right, Your Honor. But, again, our vehicle code says that we have an obligation as drivers to not hit pedestrians. So the accident has… Counsel, you want the jury to have something to hang their head on, right? Yes. You want to be able to argue that there's some evidence that this was caused by the driver and not the dart out of the young girl. What is that evidence? Well, the main evidence, I think, is, number one, the girl is hit while in a school zone where this driver knows that there are going to be children. If she's not speeding, what is the evidence that she was distracted, other than she was on a conference call? Well, the rules of the road says that, you know, talking on a phone or being on a conference call, even if not participating, with a hands-free device is distracted driving. And our courts, the 3rd District and 2nd District in particular… It's not prohibited in the school zone, as I expected it to be, frankly, when I started looking at these briefs. But it's not prohibited as long as you have a hands-free device, correct? Sure, sure. But it is still considered distracted driving, and that is something for a jury to consider. Was this person distracted or not? Let's let a group of 12 people that are familiar with the community, familiar with the area, and, you know, just take their common sense and experience… Did she make some admission that she was distracted? She did not make an admission that she was distracted, but she did say that although she is very familiar with the area, she picks up her daughter at school, she has never seen children darting between buses and crossing the street. I think a jury would like to hear that from her and assess her credibility as to whether she was distracted or participating in the call or otherwise exercising ordinary care. I think that speaks for herself. Her testimony that she doesn't… She's just unfamiliar with the concept of kids darting between cars when classes are letting out near a school is something that a jury should hear to assess that credibility. But again, we have all of these things that a jury could look at and could conclude, I think quite reasonably, that the driver in this case was negligent. She hits a girl in a school zone while using a cell phone. Let's put that to a jury. And, of course, there is some potential for contributory negligence on the part of the girl in this case. Again, that's a factual issue that ought to be put to a jury. The biggest issue here is that the judge didn't allow that to happen. The judge made findings where he says, and again, it's pages 19 and 20 of the record, I find, I find, I find, the judge never says, I don't think that any reasonable person could disagree with that. That statement never comes out during a fairly long hearing. It's just, I find the accident was unavoidable, I find there's no short or proximate cause, the evidence is clear in my mind, things like that. Again, that's contrary to what all of our case law has said when it comes to summary judgment. There are those rare instances where nobody could disagree. But I think just from what we have here, it's pretty plausible that a jury of 12 people might think, no, I think that this person was not exercising ordinary care just by being on that phone call or by not driving a little bit slower or by thinking that kids don't run out between cars in school areas at the close of class. Those are all issues that ought to have been put to a jury, that's why we have juries, to assess these kinds of things, apply their knowledge and understanding of the world and the particular area where these instances occur. I see I've only got a couple of minutes left from the light. Seconds probably, right? Seconds, right. But if the court has any questions that I can address, I'd like to do that now. So what you're saying is, if you look at the picture, reasonable minds can differ on whether the child was struck by the front of the car or whether the child ran into the side of the car. Yes, that's right, Your Honor. You're saying that, combined with the fact that she's in a school zone, on a cell phone, even hands-free, is enough. That's enough to get it at least to the jury. It shouldn't be disposed of in summary judgment. I think so, Your Honor, yes. All right. Thank you, Justice Andrews. Thank you. Thank you, Your Honor. Thank you, Mr. Bullock. Ms. Maul. Good morning. Good morning, Your Honors. Laura Maul on behalf of the defendant, Ms. Query. Your Honors, counsel, may it please the Court. You asked, actually, the crux of this case when you said to Mr. Bullock, actually, what facts do you have that a jury could consider that Judge Cerny didn't consider and which you don't have before you to consider as to whether or not summary judgment was proper? And the answer to that question is none. I don't want to make it sound like this is a simple case, but it is. The facts are very simple. This case happened back in 2019, and the only testimony and evidence you see is from the plaintiff, who has no idea what happened, from a witness, who is a school bus driver, who has a full view of everything that happens, and the defendant. And so what we know is that this is a two-way street running north-south in Naperville. Along the east side is baseball fields, a school, and apparently the plaintiff and her friends were on that side walking, running, talking, whatever they were doing. The defendant was driving southbound. This posted speed limit is 25 miles per hour. She testified she was driving approximately 20. There's no evidence to the contrary. There's not one person who has said she was not driving at or under the speed limit, she was driving erratically, she was weaving in and out, she was doing anything than driving within her lane of traffic on southbound Cedar Glade Road. Was there any evidence or argument made that this person was not using a hands-free device on the cell phone? No. She was using a hands-free device. And there's no evidence to the contrary? No evidence to the contrary, no. And, Your Honor, I, too, was surprised that you were allowed to do that in a school zone, but the statute is very clear that you can. And the only evidence and testimony we have about that phone call is that she was listening to a conference call. She wasn't asking questions. She wasn't being asked questions. She wasn't leading the group. She wasn't taking notes. She's not looking at her cell phone. She's not texting. She's doing nothing other than driving down the road and listening to a bunch of other people talking. Should that be a jury question, though? I think we've all been in a conversation on a hands-free device and maybe went our normal route when we were going to stop at the hardware store on the way there or have done something like that. How would a jury or why shouldn't a jury be able to weigh the fact that she was at least listening to something else while she was driving? Well, there's no evidence that listening to this conversation was a distraction. She didn't testify that she missed a turn. She didn't testify that she didn't know what her rate of speed was. She didn't testify that she missed something or was in a hurry or anything. The sole testimony is she was just listening to this as she was driving her normal route under the speed limit towards the school to pick up her daughter. The other issues that that plaintiff did not address that were facts in this case is this child is not at a crosswalk. There's not a crosswalk, marked or unmarked. She's not at an intersection. No one's waving her cross. Nobody is directing traffic. The only facts and evidence this court has is from Ms. Atherton that said she was on the east side of the road. She took off running, did not stop, and ran between a car and a bus and collided with the defendant. Ms. Atherton testified she never saw the defendant. Why? Because the bus was blocking her view. The plaintiff has no idea what happened. She clearly did not stop at the edge of the bus to look to see if any cars were coming. She's a 14-year-old girl, and she is old enough to know what she should be doing as far as crossing the street. In addition, there is a statute that also addresses that every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway, something she clearly did not do. Finally, the obstruction. Counsel mentions that this case, this matter, is akin to the Murka case. The Murka case is totally different. The only similarities between the two cases is that the incident happened near a school. In Murka, you have the plaintiff, or the defendant, excuse me, who sees these girls, sees these girls walking next to her through traffic, who knows that there is a crosswalk there. There's a sign that says, Watch for Children. Nothing like that is in this case. She even testified, the defendant in that case, that she thought about slowing her vehicle down but didn't before she hit the children. And she hit the children in Murka. The right side hit the first girl, which means the girl had made it all the way across in front of her, and then she hit the second child between the driver's front and the middle. That's the testimony in Murka. There's also testimony from one witness that she may have been exceeding the speed limit. So there's a whole lot of differences between what is going on in Murka and what has happened in this situation. Respectfully, the plaintiff is trying to create a question of fact by speculation. He wants to go to a jury and say, Hey, you should say, Well, maybe she was speeding, even though there was no evidence of that. Maybe she was speeding, even though there was no evidence of that. Maybe she should have anticipated that someone was going to run out between a bus and a car, and instead of going 20, she should have been going 17, and the impact would not have been as hard, or she wouldn't have hit her. Maybe she should have left five minutes earlier, and then she would not have hit. There would have not been an impact between the girl and the car. There's a lot of speculation there, and that is what the plaintiff wants this court to allow him to do and to present to a jury. Clearly, the facts are what the facts are. They are undisputed. There is case law to support it. There are statutes to support it. Respectfully, summary judgment was properly entered. I think also I did want to mention this. In his brief, they talk about comments the judge made, and I think it's a comment more on his style of speaking when he said, I find. He was reciting the facts that were presented to him, and as this court has pointed out, there's no dispute as to those facts. And so based on the facts presented to him, he determined that summary judgment was the proper ruling on my motion. So respectfully, I would ask that the lower court's ruling or order granting summary judgment be affirmed. Thank you. Thank you. Thank you. Thank you, counsel. Mr. Boley? Response? Yes, Your Honor. Mr. Boley, it's been said that summary judgment is a moment in time where you need to put up or shut up. As far as I can tell, what you put up is that there was an accident and that the driver was listening to a call on her phone, and that's against the backdrop of a child who I think admittedly started out in the traffic and was behaving the way that 14-year-olds do. What else can you put up besides an accident and she was on the phone? Well, I think, Your Honor, the main thing to put up is that using a cell phone while driving, even with a hands-free device, is distracted driving. Absolutely it is. There was no expert testimony, though, was there? Well, that's what the rules of the road says, and our courts say that drivers are on notice of the rules of the road. So we have to accept that as at least some evidence that this is, in fact, distracted driving. It's not a prima facie case, but it is probative of that. I think that is strong evidence, and our courts have discussed the rules of the road and drivers being on notice of it. Counsel, where is that in the rules of the road? That is cited in our brief. I'll give you the exact page number. Just the page is fine. The case is People v. Jackson, paragraph 20. Okay, it's in the Jackson case. Yeah, the rules of the road being incorporated or drivers being on notice of it. That's close enough, as long as it's in Jackson. But it's not in the actual rules of the road. No, that is in the actual rules of the road. Using hands-free technology, such as a headset or voice-activated control, is considered a distraction while driving and can be dangerous. If you must make a phone call, even with hands-free technology, it is recommended that you pull off to the side of the road before making the call. We cite the Internet site page from the Illinois Secretary of State's  I believe it's page 22 of the rules of the road. We'll find it. I don't want to waste any more of your time.  Just briefly also, Your Honor, with respect to what counsel said about there being no dispute as to the facts, there is a dispute as to the facts. That dispute is actually the testimony of Ms. Atherton, the bus driver. It's inconsistent. At some points in her deposition, she says that the girl hits the car. In other points of her deposition, she says that the car hits the girl. That's something that should be decided by a jury, and a judge can't look at that countervailing testimony and decide he's going to decide it goes this way rather than that way. That's a jury question. The driver herself says she hits the girl. The driver contradicts at least some of Ms. Atherton's testimony. With respect to the girl not being in the crosswalk, of course we acknowledge that in our brief, and that's the same circumstance as in Merka. That's an issue of contributory negligence, and that's also, of course, a quintessential factual question. But what we have here, we have photographs that illustrate, in my mind, that this girl was hit by the car and not the other way around. We have the rules of the road saying don't use cell phone while you're driving, even with hands-free technology. It's distracted driving. And the jury should assess, did that distracted driving contribute to this accident? Those are jury questions. Would it be different from listening to the radio or having a conversation with another person? I think so, Your Honor. If I'm in a car with somebody and I'm having a conversation with them, I'm going to modulate what I say as he or she approaches an intersection or if there's a merge on a highway or something like that. That's not going to happen with a cell phone call, a conference call particularly. Also, this conference call, one, again, that was related to her work, it's so critically important that she couldn't just excuse herself to pick up her daughter. That's something the jury ought to assess. Was she engrossed in this call that might decide the fate of her career, her salary, her livelihood? I mean, all of those are jury questions, and that's a lot different than hearing a song on the radio. Sometimes, like, we're driving and something comes on the radio, there's a weather report, and as Your Honor indicated, we forget where we were going to go. And I think that's, again, something the jury ought to consider, using all of the things that juries understand about their lives. Your Honor, I'm down to my last minutes. If there are any other questions I can address, I'd be happy to do that now. Thank you. Thank you, Your Honors. Thank you, Mr. Bulley. Counsel, thank you very much for your arguments here today. We will take this matter into consideration and issue a written opinion in due course.